IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GARY CRAWFORD, <br> aka Gary Taxes, <br><br> Movant/Defendant, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent/Plaintiff. | : <br> : <br> : <br> : <br> : Crim. Act. No. 11-103-RGA <br> : Civ. Act. No. 15-553-RGA <br> : <br> : <br> : <br> : |

## **MEMORANDUM OPINION**

Gary Crawford. *Pro se* Movant.

Shannon Thee Hanson, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for respondent.

March 13, 2017

*/s/ Richard G. Andrews*
ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Movant Gary Crawford's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (D.I. 73; D.I. 75) The Government filed an Answer in Opposition. (D.I. 80) For the reasons that follow, the Court will deny Movant's § 2255 Motion.

## I.  BACKGROUND

Movant was the leader and organizer of a large tax fraud conspiracy involving the electronic filing of hundreds of false federal income tax returns for the 2008 tax year. (D.I. 48 at 2) On November 1, 2011, a federal grand jury returned a thirty-six count indictment charging Movant with: (1) conspiracy to defraud the United Sates, with respect to false claims, in violation 18 U.S.C. § 286 (Count One); (2) making false claims, in violation of 18 U.S.C. § 287 (Counts Two - Eighteen); (3) conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count Nineteen); and (4) wire fraud, in violation 18 U.S.C. § 1343 (Counts Twenty – Thirty-Six). (D.I. 3) On April 11, 2012, Movant pled guilty to Count One of the Indictment, charging him with conspiracy to defraud the United States, with respect to false claims, in violation of 18 U.S.C. § 286. (D.I. 25; D.I. 69) The Court sentenced Movant to ninety-seven months of incarceration. (D.I. 62)

Movant appealed, and counsel filed a merits brief in the Third Circuit asserting one claim that the District Court erred in applying a two-level enhancement under U.S.S.G. § 3B1.3 for use of a "special skill." *See United States v. Crawford*, C.A. 13-3960, Electronic Br. on Behalf of Appellant Gary Crawford (3d Cir. Dec. 30, 2013). The Government moved for a summary affirmance, contending that the appeal was baseless because the Court had not applied a "special skill" enhancement. (D.I. 80 at 2) In February 2014, counsel filed a response, seeking to

1

substitute an *Anders* brief for the merits brief. *See United States v. Crawford*, C.A. 13-3960, Response filed on Behalf of Appellant Gary Crawford With Request to Withdraw Op. Br. and Leave of Court to File Motion to Withdraw as Counsel and an *Anders* Br. (3d Cir. Feb. 4, 2014). The Third Circuit directed Movant to file any response to the Government's summary affirmance motion and his counsel's response and *Anders* brief. *See United States v. Crawford*, C.A. 13-3960, Order (3d Cir. Mar. 27, 2014). On June 13, 2014, the Third Circuit dismissed Movant's appeal after he filed a response indicating he wished to withdraw his claim. (D.I. 72)

On June 18, 2015, Movant filed a § 2255 Motion, followed by an Amended § 2255 Motion on August 3, 2015. (D.I. 73; D.I. 75) The Government filed an Answer in Opposition. (D.I. 80) Movant filed a Response. (D.I. 83)

II. DISCUSSION

Movant's timely filed § 2255 Motion and Amended § 2255 Motion appear to assert the following grounds for relief:[1] (1) the Court incorrectly calculated his advisory guidelines range; (2) the Government engaged in misconduct by failing to provide the defense with potential impeaching evidence contained in the interview notes, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (3) defense counsel provided ineffective assistance during the pre-trial/pre-plea phase by failing to adequately investigate the case, to obtain full discovery, to make himself available, to articulate a defense, and to file any pre-trial motions; (4) defense counsel provided ineffective assistance during the sentencing hearing by failing to object to the loss amount and enhancements; and (5) defense counsel provided ineffective assistance on appeal by asserting a frivolous argument and unilaterally changing the argument raised on appeal without Movant's agreement.

---

[1]For ease of analysis, the Court has renumbered the Claims without altering the substance of Movant's arguments.

2

In response, the Government contends that Claim One should be denied as procedurally barred or for not being cognizable on § 2255 review; Claim Two should be denied as procedurally barred, waived as a result of the guilty plea, or as meritless; and Claims Three, Four, and Five should be denied as meritless. For the following reasons, the Court will deny all five claims.

### A. Claims One and Two: Procedurally Barred

If a movant fails to raise a claim on direct appeal, that claim is procedurally defaulted and cannot thereafter be reviewed pursuant to 28 U.S.C. § 2255 unless the movant demonstrates cause for the default and prejudice resulting therefrom, or that he is actually innocent. *See Bousley v. United States,* 523 U.S. 614, 621-23 (1998). To establish cause for a default, a movant must demonstrate that "some objective factor external to the defense impeded counsel's efforts to raise the claim." *United States v. Essig,* 10 F.3d 968, 979 (3d Cir. 1993). An attorney's failure to preserve or raise a claim on direct appeal can constitute cause for a movant's procedural default only if the attorney's failure amounts to constitutionally ineffective assistance of counsel. *See Hodge v. United States,* 554 F.3d 372, 379 (3d Cir. 2009). To establish prejudice, a movant must show that "that the errors at his trial . . . worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis omitted). Notably, if the movant fails to demonstrate cause, a court is not required to determine if the movant was prejudiced by the default. *See Smith v. Murray,* 477 U.S. 527, 533 (1986).

In Claim One, Movant contends that the court improperly applied the two-level Guideline enhancement for obstruction of justice, as well as the one-level enhancement beyond the stipulated loss amount. In Claim Two, Movant appears to contend that the Government engaged

3

in prosecutorial misconduct and/or violated *Brady* by providing the defense (or the probation officer who drafted the PSR) with a revised version of Special Agent Carpenter's "post-interview notes or notebook" dated November 2, 2011, instead of with the original "true copy" of those notes. (D.I. 75 at 17) According to Movant, the Government "suppressed this substantial exculpatory information from the defense causing [defense counsel] to believe in his client's guilt as shown in that letter where it was talked about previously and described throughout the court transcripts." (D.I. 75 at 19) Movant argues that defense counsel's actions were a direct result of the Government's suppression of evidence. *Id*. Therefore, in Movant's opinion, he was prejudiced by the alleged suppression of the original "non-revised" post-interview notes.

Since Movant voluntarily withdrew his direct appeal, the Third Circuit has not had an opportunity to review the merits of his arguments. Consequently, Claims One and Two are procedurally defaulted.

Movant attempts to establish cause for his default by asserting he could not have filed a *pro se* appellate brief because he was initially represented by counsel on direct appeal. This argument is unavailing. The Third Circuit provided Movant with an opportunity to respond to counsel's *Anders* brief, but instead of responding, Movant voluntarily chose to withdraw his appeal. Thus, the fact that Movant was represented by counsel during his short-lived appeal does not constitute cause for his default of Claims One and Two.

Given Movant's failure to establish cause, the Court does not need to address the issue of prejudice. The Court also notes that Movant's default of the instant claims cannot be excused under the miscarriage of justice exception to the default doctrine, because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims One Two as procedurally barred.

4

### B. Claims Three, Four, and Five: Ineffective Assistance of Counsel

Movant has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first ("performance") prong of the *Strickland* standard, Movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second ("prejudice") prong of the *Strickland* standard, Movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694. In the context of a guilty plea, a movant satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). A court can choose to address the prejudice prong before the performance prong, and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 696. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id.* at 689.

#### 1. Counsel provided ineffective assistance during the plea process

In Claim Three, Movant contends that defense counsel provided ineffective assistance during the plea process by failing to adequately investigate the case, obtain full discovery, make himself available, articulate a defense, and file any pre-trial motions. This claim is unavailing. It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity"

5

that creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the transcript of the plea colloquy contains Movant's clear and explicit statements that he had discussed his case with defense counsel, he was fully satisfied with counsel's advice, he had a full opportunity to review the Plea Agreement with counsel, there were no promises other than those contained in the Plea Agreement, and he was not forced to enter the Plea Agreement. (D.I. 69 at 6-7, 11-12) The Court also summarized the Plea Agreement for Movant to ensure that he understood its terms and its effect on the balance of the criminal proceedings. (D.I. 69 at 7-11) Movant indicated that he understood the factual basis for his guilty plea, that he understood he had a right to proceed to trial, that he was pleading guilty of his own free will because he was guilty, and that he understood the sentencing process and the applicability of the sentencing guidelines. (D.I. 69 at 7-20, 23-24) Because Movant does not provide any reason to believe that the statements he made during the plea colloquy should not be presumptively accepted as true, the Court concludes that any alleged pre-plea deficiencies in defense counsel's performance were cured by the Plea Agreement and plea colloquy. Therefore, Movant has failed to satisfy *Strickland*'s performance prong.

Movant has similarly failed to allege sufficient facts to satisfy *Strickland*'s prejudice prong. To begin, Movant does not assert that he would have proceeded to trial but for defense counsel's actions. Additionally, the overwhelming evidence of his guilt precludes a showing of prejudice. As set forth in the Government's Reply to Movant's Sentencing Memorandum, Movant and his co-conspirators used at least forty-seven different Internet service accounts, in the names of various people, to file at least 358 false federal tax returns between January and September 2009. (D.I. 48 at 2) The United States Treasury actually paid out $2,265,254 in "refunds" on 293 fraudulent returns filed by Movant and his co-conspirators. One hundred and

five of the total 358 false income tax returns directed the IRS to deposit all or a portion of the "refunds" into bank accounts in Movant's name, with $269,039 being deposited into the accounts in Movant's name. *Id.* Finally, Movant benefitted greatly by pleading guilty. He was originally indicted on thirty-six counts, and he might have realistically faced a potential overall sentence significantly greater than ten years if he had rejected the plea offer and been convicted on most or all counts that could have been brought. (*See* D.I. 75 at 38) In exchange for Movant's agreement to plead guilty to Count One of the indictment, the Government agreed to dismiss the other thirty-five counts, and Movant faced a maximum sentence of ten years of imprisonment. (D.I. 25 at 1; D.I. 46) Upon his conviction, Movant was sentenced to eight years and one month of imprisonment.

Given all of these circumstances, Movant has failed to demonstrate how he was prejudiced by counsel's actions. Accordingly, the Court will deny Claim Three as meritless.

### 2. <u>Counsel provided ineffective assistance during the sentencing phase</u>

Movant's co-conspirator, Donald Tillman, was one of Movant's primary assistants in the tax scheme. (D.I. 48 at 17) Tillman helped Movant gather taxpayer information, open bank accounts for "refund" deposits, and aided in the filing of false returns seeking $420,062 in falsely claimed "refunds." *Id.* In November 2009, the IRS-CI executed a search warrant at Tillman's New Jersey residence. During the search, the agents found handwritten lists of approximately 100 individuals and their names, dates of birth, social security numbers, and bank accounts with routing information. *Id.* False returns were filed on behalf of twenty individuals, many with portions or the entirety of their refunds being deposited into Tillman's bank accounts and/or being filed from his fiancée's house. *Id.* Papers found during the search contained "owe sheets" calculating the "refund" splits and amounts for tax returns, showing that Tillman paid Movant

7

$1,000 for each return, and then Tillman split the remainder between himself and the taxpayer. *Id.*

When interviewed in conjunction with the execution of the warrant, Tillman admitted that he created the papers and explained how Movant introduced him to the scheme. (D.I. 48 at 18) Tillman stated that he worked with Movant from January 2009 to July 2009, and then began preparing fraudulent tax returns on his own after July 2009. *Id.*

During the detention hearing, Tillman testified that he learned Movant had solicited another inmate with a violent criminal history to kill Tillman for $10,000. (D.I. 47, Exh. 9 at 32-33) Tillman testified that his ex-girlfriend, Tashieka Blake, told him that Movant had solicited her brother, "Smallworld," to kill Tillman. *Id.* "Smallworld" was incarcerated at the same time in the Salem County Jail with Movant and Catina Brown's brother, Briashon Brown. "Smallworld" was released from the jail on or about November 6, 2011 – four days after Movant was arrested and incarcerated there. (D.I. 47, Exh. 9 at 32-33; D.I. 80 at 19) Tillman testified that he subsequently met with "Smallworld," who confirmed that Movant had offered him $10,000 to "off [Tillman], kill [Tillman]." (D.I. 47 at 33-35; D.I. 80 at 19) Tillman also testified that, according to "Smallworld," Movant directed Catina Brown to money Movant had hidden and instructed Brown to pay the $10,000 to "Smallworld." (D.I. 47 at 35-36; D.I. 80 at 19-20) "Smallworld" also told Tillman that Brown actually did give "Smallworld" the money, but that he declined to take it and to perform the murder. (D.I. 47 at 36; D.I. 80 at 19-20) Prior to sentencing, the Government asked for a two-level enhancement due to its theory that Movant obstructed justice by soliciting another prison inmate to kill Tillman, because Movant believed Tillman was cooperating with the Government's investigation.

8

In Claim Four, Movant contends that defense counsel provided ineffective assistance during the sentencing phase by: (1) insufficiently objecting to the two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1; (2) failing to object that the estimation of the "loss" amount in the PSR was higher than the stipulated loss amount in his Plea Agreement; and (3) failing to address an error with the calculation of his criminal history. (D.I. 73 at 16, 30; D.I. 75 at 3, 9-16) None of these contentions warrant relief.

### a. Insufficient objection to two-level enhancement for obstruction of justice

The fact that defense counsel did not prevail in his objections against the obstruction of justice enhancement did not amount to deficient performance. To begin, the record reveals that defense counsel vehemently and extensively objected to the Government's obstruction of justice theory from the time of the detention hearing through the sentencing hearing, and defense counsel's arguments that the Government had not met its burden of proving that any actions by Movant obstructed justice were a major focus of the sentencing hearing. (D.I. 47, Exh. 9 at 28, 71-84, 142, 173-191; D.I. 80-2 at 10-12, 19-20) Defense counsel contended that it was Movant's girlfriend, and not Movant, who wanted Tillman to be intimidated, stating that, "if his girlfriend did it, Your Honor, there's no conversations between the two of them making it look like [Movant] was in any way encouraging that." (D.I. 80-2 at 10)

In addition, the Court found Tillman to be more credible than Crawford. Against the advice of counsel, Movant testified during sentencing and stated that the recorded conversation referenced by the Government actually involved his attempt to influence a different criminal matter in New Jersey completely unrelated to Donald Tillman, namely, a matter concerning Katina and Rashawn Brown. (D.I. 80-2 at 13-19) After listening to Movant's testimony, the Court noted that the case was close, but concluded that Movant's credibility was "not that great"

and that the Government had proven the applicability of the enhancement by a preponderance of the evidence. (D.I. 68 at 95-100, D.I. 82 at 25) The Court also relied on the fact that the Magistrate Judge presiding over the detention hearing found Tillman to be credible. (D.I. 68 at 76-77, 88, 95)

Movant also cannot demonstrate a reasonable probability that his sentence would have been different but for counsel's performance, because the Court had an adequate factual basis upon which to apply the obstruction enhancement. For instance, the Court relied on the transcript from the detention hearing, during which Tillman testified about how he learned Movant had solicited another inmate with a violent criminal history to kill Tillman for $10,000. (D.I. 47, Exh. 9 at 31-37, 51-77; D.I. 80-2 at 10, 12, 23) The Court also relied upon the recordings of telephone conversations and webcams between Movant and others from the Salem County Jail regarding the attempted intimidation. (D.I. 80-2 at 10, 12, 13, 24) These recordings established that communications occurred between Movant, "Smallworld," Catina Brown, and her son Briashon Brown, about "Smallworld" taking some action at Movant and the Browns' request. (D.I. 80 at 20-22; D.I. 80-2 at 13, 24) In addition, the Court considered the recordings of interviews between law enforcement and Tillman and law enforcement and Tashieka Blake. (D.I. 80 at 20) The Court also referenced Special Agent Carpenter's testimony that Blake and "Smallworld" were unwilling to testify at the detention hearing because they feared that doing so would jeopardize their safety. (D.I. 47, Exh. 9 at 88; D.I. 80 at 202) Blake told Special Agent Carpenter that she and "Smallworld" believed Movant had "money and can do what he says he could do." (D.I. 47, Exh. 9 at 88) This extensive factual record supports that application of the obstruction of justice enhancement. Therefore, the first argument in Claim Four does not warrant relief under § 2255.

### b. Failed to object that the estimated loss amount in PSR was higher than the stipulated loss amount

In his second argument of Claim Four, Movant asserts that defense counsel did not sufficiently object to the fact that the PSR loss amount and the loss amount determined by the Court was greater than the loss amount stipulation contained in the Plea Agreement. For instance, the stipulation in Movant's Plea Agreement states, in relevant part, that Movant "agrees that losses exceeding $1 million, but less than $2.5 million, are attributable to him at sentencing pursuant to Guidelines Section 2T1.1(a)(1) and 2T4.1(I), and were reasonably foreseeable by him as a consequence of his conduct." (D.I. 25 at ¶ 5) The stipulation also provides that the Government reserved "the right to present evidence and to argue for purposes of sentencing that losses exceeding $2.5 million, but not greater than $3,060,770, [were] attributable to [Movant] pursuant to Guidelines Section 2T1.1(a)(1) and 2T4.1(J)." *Id.*

In contrast, the PSR set the loss at $3,051,337. (D.I. 68 at 8) Prior to the sentencing hearing, defense counsel objected to the loss calculations contained in the PSR, arguing that the evidence was insufficient to prove Movant's liability for a tax loss exceeding $2.5 million. (D.I. 80 at 23) Movant asserted that the loss was actually $2,124,392, and stated that a sixteen level enhancement pursuant to § 2B1.1(b)(1)(I) should apply for an intended tax loss from $1 million to less than $2.5 million. (D.I. 48 at 14) The Government disagreed, and asserted that the loss was at least $2,558,605. (D.I. 48 at 22; D.I. 68 at 8)

During the sentencing hearing, the Court determined the loss amount as follows:

> So what I'm going to do is the two guideline ranges that we're talking about, one is $1 million to $2.5 million, that gets plus sixteen. The other one – the one right above it – is $2.5 million to $7 million, and that's plus eighteen.
>
> If there were an overlapping range, it would be approximately $1.5 million to $4 million. All three of the numbers that are [being] bandi[ed] about fall smack in the middle of that. And so what I'm going to do is I'm going to treat the

11

> economic loss as being in this range that's in between and I'm going to give plus seventeen.

(D.I. 68 at 9) With respect to the difference between the loss numbers set forth by the Government and Movant, and the respective different enhancements attributed to each, the Court explained:

> [W]hen you're talking about numbers that are that big, there's imprecision around the margins. And so, you know, at some point – I really don't think it's going to make any ultimate difference in the sentence [].

(D.I. 68 at 10) Neither party objected to the Court's compromise of applying a seventeen level enhancement.

Defense counsel's failure to object to the higher loss amount in the PSR, or the Court's compromise decision with respect to the loss amount, does not warrant relief. When determining which level enhancement to apply under § 2B1, a sentencing court must "only make a reasonable estimate of the loss." *See* U.S. Sentencing Guidelines Manual § 2B1.1 App. Note 3(C). A sentencing court may hold the defendant responsible for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." *Id.* at § 1B1.3(a)(1). Pursuant to this sentencing framework, Movant could be held responsible for the filing of false tax returns by others, and the resultant pecuniary harm, if those acts were committed as part of "a criminal plan, scheme, endeavor, or enterprise undertaken by [Movant] in concert with others" and were reasonably foreseeable. *Id.* at § 1B1.3(a)(1)(B). "Reasonably Foreseeable Pecuniary Harm" is defined as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id.* at § 2B1.1 App. Note 3(A)(iv).

Here, Movant cannot demonstrate prejudice because the factual record supports the Court's loss determination and its decision to apply a seventeen level enhancement. Special

12

Agent Carpenter connected 358 false tax returns to the conspiracy Movant led, and the 105 false tax returns that listed Movant's bank accounts demonstrated a total loss of $1,112,900. (D.I. 80 at 26) Five witnesses -- Donald Tillman, Ikeia Johnson, Rasheda Bundy, Yvette Streeter, and William Seals -- provided information that linked falsely claim tax "refunds" totaling $1,267,165 to Movant. (D.I. 80 at 26) Finally, during his post-arrest interview, Movant admitted that he filed another twenty-two false tax returns traced to his sister-in-law which sought a total of $188,640 in false refunds. *Id.* Adding the aforementioned false refund amounts together equals $2,568,605, thereby satisfying the $ 2.5 million loss threshold for the eighteen level enhancement. Since the Court would have been justified in applying the eighteen level enhancement instead of the seventeen level enhancement it actually did apply, Movant cannot demonstrate a reasonable probability that, but for counsel's actions, his sentence would have been lower.

### c. Did not object to the erroneous assignment of three points for criminal history

Movant's final contention, that defense counsel failed to challenge the assignment of three points for one of his prior drug convictions, is similarly unavailing. The record reveals that defense counsel actually did object to the assignment of three points for Movant's prior drug conviction and sentence by pointing out that Movant was incarcerated for only a short period of time for that conviction. (D.I. 75 at 21, 37-50) Moreover, although the Probation Office confirmed that Movant was paroled after a short period of incarceration on the drug conviction, it noted that Movant remained under his sentence of imprisonment while on parole. (D.I. 80 at 28-29; D.I. 80-2 at 32) Finally, the Court placed little weight on Movant's prior drug convictions when determining his sentence, and focused on his instant offense by considering the size and scope of the fraud, the amount of loss, and Movant's efforts to obstruct justice. (D.I. 80-2 at 38-

13

39) Given these circumstances, Movant cannot demonstrate a reasonable probability that he would not have been assigned three points for his criminal history but for counsel's actions. Thus, the second argument in Claim Four does not warrant relief.

### 3. Claim five: ineffective assistance on appeal

In Claim Five, Movant contends that defense counsel provided ineffective assistance during the direct appeal by filing a merits brief challenging the application of a Guideline enhancement that the Court never applied. Movant also contends that defense counsel was ineffective for not properly challenging the calculation of the Guideline range with respect to the loss amount and obstruction of justice enhancement. Both of these contentions are unavailing. First, Movant cannot demonstrate that he suffered prejudice as a result of defense counsel's actions, because he voluntarily dismissed his appeal after being provided an opportunity to challenge defense counsel's *Anders* brief. Second, Movant essentially re-asserts the same ineffective assistance of counsel allegations contained in Claims Three and Four, which the Court rejected. Consequently, defense counsel's failure to raise the same issues on direct appeal do not amount to ineffective assistance for the same reasons. Accordingly, the Court will deny Claim Five as meritless.

## III. EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously discussed, the record conclusively demonstrates that Movant

14

is not entitled to relief under § 2255. Therefore, the Court concludes an evidentiary hearing is not warranted.

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court is denying Movant's § 2255 Motion after determining that his Claims are either procedurally barred or meritless. The Court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the Court will not issue a certificate of appealability.

## V. CONCLUSION

The Court concludes that Movant is not entitled to relief pursuant to 28 U.S.C. § 2255. An appropriate Order will issue.